UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN JAY LACEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-00120-JMS-DLP |
| ) | |
| JEFF HECK, et al. ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff John Jay Lacey is an Indiana prisoner incarcerated at Wabash Valley Correctional Facility. Mr. Lacey's complaint alleged that while he was a pretrial detainee at the Boone County Jail, defendants Jail Commander Jeff Heck, Lieutenant Carl Joe Rady,[1] Volunteer Chaplain Jack Bland, and Jail Administrator Susan Kinney imposed a substantial burden on his religious beliefs or practices when they denied him access to religious materials and objects. He further alleged that defendant Jeff Heck failed to provide Halal meals. Finally, he alleged that Sheriff Michael Nielsen retaliated against him. The Court allowed these First Amendment claims to proceed and dismissed other claims that failed to state viable constitutional violations.  Dkt. 5.

The Court previously granted summary judgment to defendant Nielsen because Mr. Lacey had not exhausted administrative remedies for the claim alleged against Nielsen before filing this lawsuit. Dkt. 50. The remaining defendants have now moved for summary judgment on the claims against them. Dkt. 138. Mr. Lacey responded and the defendants replied. Dtk. 142; dkt. 145. Mr.

---

[1] The defendant indicates that the correct spelling of his last name is Rady. The clerk is **directed** to update the docket to reflect this spelling.

Lacey then filed a surreply to which the defendants objected. Dkt. 148; dkt. 152. In response, Mr. Lacey filed a supplemental surreply. Dkt. 156.

For the reasons explained below, the defendants' motion for summary judgment, dkt. [138], is **granted.** The defendants are entitled to judgment as a matter of law.

## I. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir.

2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II. Mr. Lacey's Surreplies

Before turning to the facts, the Court will address the Mr. Lacey's surreplies and the defendants' objection to them. The focus of the parties' additional briefing is Mr. Lacey's failure to designate evidence as required by Local Rule 56-1(e) in his original response.

While it is "well established that pro se litigants are not excused from compliance with procedural rules," *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008), whether the Court holds pro se litigants to the consequences of violating the Court's Local Rules is a matter of discretion, *Gray v. Hardy*, 826 F.3d 1000, 1004-05 (7th Cir. 2016) (holding that district courts are not required to hold pro se litigants to the potential consequences of their failure to comply with the Local Rules and can instead take "a more flexible approach," including by ignoring the deficiencies in their filings and considering the evidence they submit).

Mr. Lacey did not comply with Local Rule 56-1, but a "flexible approach" to compliance with the Local Rules is warranted here. Mr. Lacey attached exhibits to his response and the Court will consider those exhibits. However, the Court will not consider any new evidence in Mr. Lacey's surreplies. Local Rule 56-1(d) provides for a surreply if the reply cites new evidence or objects to the admissibility of the evidence cited in the response. In such a case, the surreply is limited to the new evidence and objections. Here, the defendants' reply objected to evidence in the Mr. Lacey's response, but Mr. Lacey's surreply does not address those objections. Instead, the surreply seeks to admit additional evidence which is not permitted by Local Rule 56-1(d). All the additional exhibits appear to be documents Mr. Lacey possessed, or could have possessed, at the time of his

original reply. He does not explain why he did not include these exhibits in his original response. These are not circumstances that call for a departure from the rules. Therefore, the Court will consider Mr. Lacey's response and the evidence included with the response, but not his surreplies or the new evidence included with those surreplies.

### III. Undisputed Facts

John Lacey was a pre-trial detainee held in the Boone County Jail from June 22, 2016 to March 2, 2017. Dkt 140-1, Lacey Deposition at 13. He pleaded guilty to a crime on February 15, 2017 and was later transferred to the Indiana Department of Correction (IDOC). *Id*. at 26. The Boone County Jail had a communication kiosk which Mr. Lacey used to purchase commissary items and send messages to Jail staff. *Id*. at 51.

When he came to the Boone County Jail in June of 2016, Mr. Lacey was practicing Hinduism. *Id*. at 17. He decided to convert to Islam from Hinduism around October 28, 2016. *Id*. at 53-54. There were approximately six Muslim inmates in the Boone County Jail during Mr. Lacey's incarceration. *Id*. at 80.

#### A. Halal meals

On October 20, 2016, Mr. Lacey sent an email through the kiosk system asking to be put on Halal meals. *Id*. at 72. After that email was sent, he was then placed on a Halal diet. From late October of 2016 until he left the Boone County Jail Lacey regularly received Halal meals except for a period he wanted off the diet due to a dairy restriction. At the time of Mr. Lacey's deposition, his only complaint about meals within the Boone County Jail was that he believes that his meal was adulterated on one occasion. *Id*. at 73. On that one occasion, in December of 2016, his meal smelled of ammonia, and he did not eat it. *Id*. at 36. He believes that the ammonia was placed by the Jail trustees who prepared the food and that Commander Heck was supposed to inspect all food

4

trays before they were delivered to inmates. *Id.* at 44. Commander Heck disputes that he had any involvement in meal preparation or distribution. Dkt. 140-5, Heck Affidavit. The other defendants had no role in preparing or distribution meals.

At the time of filing his response brief, Mr. Lacey had developed the belief that none of the meals he received at the Boone County Jail were Halal because they were not produced according to Islamic dietary law. Dkt. 142 at 2-3.

### B. Koran and Devotional Items

Inmates were not able to purchase religious texts like the Koran or Bible from the Boone County Jail. But they could borrow such texts from the Jail book cart. And family members or friends could order a book from Amazon.com and have it delivered to the inmate at the Jail. Dkt. 140-2, Kinney Affidavit.

In August of 2016, the Boone County Jail purchased six Korans in response to the increased number of Muslim inmates in the preceding years. *Id.* The six Korans were placed on the book cart. The book cart was moved from location to location within the Jail by Jail officers. Ms. Kinney had no involvement in deciding where the book cart would be taken within the Jail and no involvement in keeping track of how long inmates would keep the books. *Id.*

The parties dispute whether all inmates had access to the book cart. The defendants state that inmates in segregation had regular access to the book cart. Mr. Lacey disagrees. Dkt. 142 at 3. In any event, Mr. Lacey never saw a Koran on the book cart. He borrowed one from another inmate for a day and a half and he asked his dad to order him one on Amazon.com but his dad refused. Dkt. 140-1, Lacey Deposition at 45-46. At no time since the Korans were placed on the book cart has Ms. Kinney been advised that inmates desiring a Koran were not able to borrow a Koran from the book cart. At no time did Mr. Lacey ask Susan Kinney or Carl Joe Rady for a Koran. Dkt. 140-

2, Kinney Affidavit; dkt. 140-3 Rady Affidavit. Jeff Heck recalls Mr. Lacey inquiring in writing and in person about the availability of a Koran. Commander Heck referred Mr. Lacey to the book cart and also told him that an inmate could obtain a Koran by having a friend or family member order him a Koran off of Amazon.com and have it sent to the Jail. It was common for inmates to obtain books in that manner. At no time did Mr. Lacey complain about lack of access to a Koran on the book cart to defendants Kinney, Rady, or Heck. Dkt. 140-5, Heck Affidavit; dkt. 140-2, Kinney Affidavit; dkt. 140-3 Rady Affidavit. The parties dispute whether Mr. Lacey asked Chaplain Jack Bland for a Koran. Chaplain Bland testified that if Mr. Lacey had asked for a Koran, Chaplain Bland would have pointed him to the book cart. Dkt. 140-4, Bland Affidavit.

A prayer rug is a piece woven fabric which Muslims place on the ground to pray to Allah. Dkt. 140-1, Lacey Deposition at 55-56. Because he did not have a prayer rug, Mr. Lacey placed a folded blanket on the floor to pray. *Id*. at 57-58. He used the blanket between October of 2016, when he first inquired about the availability of a prayer rug and January 14, 2017 when he inquired again about purchasing a prayer rug. *Id*. at 60.

Muslim prayer beads are reminiscent of rosaries in the Christian faith and resemble a necklace. Mr. Lacey talked to Susan Kinney about beads in January of 2017 when he spoke to her about the prayer rugs. *Id*. at 65-66. Jeff Heck and Susan Kinney told him that he would not be able to bring a prayer rug or beads with him to the IDOC and that it would be a waste of money for him to buy a rug at that point. *Id*. at 61. Because Mr. Lacey knew he was soon going to the IDOC, and he was able to say his prayers without using the physical beads or an actual prayer rug, he decided to not purchase these items. *Id.* at pg. 58-59, 62, 67. Mr. Lacey had no communication with Lt. Rady and Chaplain Bland about prayer beads or rugs. *Id*. at pg. 68.

### IV. Discussion

Mr. Lacey complains that the defendants failed to provide him with Halal meals, a Koran, prayer rug, and prayer beads. The Court screened this claim as a First Amendment claim. The Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq, "confers greater religious rights on prisoners than the free exercise clause has been interpreted to do." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). However, RLUIPA only authorizes injunctive relief; it "does not create a cause of action against state employees in their personal capacity." *Id*. Because Mr. Lacey was no longer incarcerated at the Boone County Jail at the time he filed his complaint, he could not bring a RLUIPA claim.

But whether under RLUIPA or the First Amendment, jail officials are not required to purchase religious texts or devotional items for inmates. *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005) ("RLUIPA does not require a State to pay for an inmate's devotional accessories"); *see also Henderson v. Frank*, 293 F. App'x 410, 413–14 (7th Cir. 2008) (correctional officials not required to purchase religious texts for Taoist inmate).

There is no evidence that the defendants prevented Mr. Lacey from obtaining the religious texts and devotional items he sought. To the contrary, defendants Heck and Kinney told him he could purchase these items, but he chose not to. In addition, the jail purchased six Korans shortly before Mr. Lacey converted to Islam. He reported that there were approximately six Muslim inmates in the jail while he was incarcerated there. Although he was unable to access one of the Korans from the book cart, the jail made reasonable efforts, beyond what is required by the First Amendment, to provide religious materials to jail inmates.

The Court now turns to Mr. Lacey's claim that he was denied Halal meals. At the time of his deposition, Mr. Lacey claimed that he received Halal meals while at the jail, but that one meal

smelled of ammonia, so he did not eat it. He believed it had been contaminated by a jail trustee. Mr. Lacey's testimony is that defendant Heck told him the smell was vinegar, but that vinegar is not an ingredient in a Halal diet. In any event, Mr. Lacey did not consume the meal.

Whether construed as an Eighth Amendment conditions of confinement claim or a First Amendment free exercise claim, the deprivation of one meal is not unconstitutional. For a prison official to be liable under the Eighth Amendment, the inmate must demonstrate that the deprivation suffered was, objectively, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). That is, the prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 298. A district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). The denial of a single meal does not meet this standard. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (occasionally missing breakfast did not state an Eighth Amendment claim); *Berry v. Brady,* 192 F.3d 504, 506-07 (5th Cir. 1999) (the denial of eight meals over seven-month period did not support Eighth Amendment claim).

First Amendment claims are evaluated under the substantial burden test, which requires the plaintiff to show that the defendants substantially burdened his free exercise rights. *See Patel v. Bureau of Prisons,* 515 F.3d 807, 814 (8th Cir. 2008) ("[T]he same definition of 'substantial burden' applies under the Free Exercise Clause, RFRA, and RLUIPA."). "[A] prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009) (failing to provide a non-meat diet during Lent and on Fridays substantially burdened the religious practice of a Roman Catholic prisoner). Unlike a complete or recurring denial of a religious diet,

the denial of one Halal meal due to perceived contamination did not substantially burden Mr. Lacey's free exercise rights or force him to choose between his religious practice and adequate nutrition.

Mr. Lacey seeks to reframe this claim in his response. He now claims that none of the meals he received in the Jail were Halal because they were not prepared according Islamic dietary law. This directly contradicts his deposition testimony. Even if the Court were to allow him to submit the affidavit, he provided with his improper surreply, a plaintiff cannot resist summary judgment by contradicting his deposition testimony unless the change rests on newly discovered evidence or a mistake or confusion in his deposition. *James v. Hale*, 959 F.3d 307, 317 (7th Cir. 2020). But the allegations in Mr. Lacey's affidavit—that there is only one kitchen at the Boone County Jail and that the regular diet often includes pork products—were facts that Mr. Lacey knew at the time of his incarceration at the Jail, his deposition, and the filing of his response brief when he affirmed that he had received Halal meals and had no complaints about them other than the single contaminated meal in 2016. If Mr. Lacey wished to pursue a claim that the Jail was not properly preparing Halal meals, he should have included these allegations in his complaint, sought to amend his complaint, or at the very least discussed them during his deposition when asked whether he had complaints about the Halal meals he was served.

The exhibits attached to Mr. Lacey's response do not change this result. He attaches defendants' discovery responses which show that the defendants, who did not prepare or deliver meals at the jail, did not possess any documents related to the preparation of Halal meals at the Jail. The discovery responses do not create a dispute of material fact.

"[S]ummary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a

genuine dispute of material fact for trial. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citations omitted). Mr. Lacey has failed to identify any genuine dispute of material fact for trial. There is no evidence the defendants violated Mr. Lacey's rights under RLUIPA or the First Amendment. The defendants are entitled to judgment as a matter of law.

## V. Conclusion

The motion for summary judgment, dkt [138], is **granted.** The defendants are entitled to judgment as a matter of law. Final Judgment in accordance with this Order, the Screening Order, dkt. [5], and the Order granting summary judgment to defendant Michael Nielson, dkt. [50], shall now issue.

**IT IS SO ORDERED**.

Date: 7/28/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JOHN JAY LACEY
263056
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Paul Thomas Belch
TRAVELERS STAFF COUNSEL
pbelch@travelers.com

Robert V. Clutter
TAYLOR, CHADD, MINNETTE, SCHNEIDER & CLUTTER, P.C.
bclutter@tcmsclaw.com